UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OTIS J. WRIGHT,

       Petitioner,

v.                                    Case No. 8:10-cv-770-T-33TGW

SECRETARY, DEPARTMENT OF CORRECTIONS,

       Respondent.
_____

## <u>ORDER</u>

THIS CAUSE is before the Court on Petitioner Otis J. Wright's timely-filed 28 U.S.C. § 2254 petition for writ of habeas corpus.  Wright is proceeding on his amended petition (hereinafter "petition" or "Petition"). (Doc. 4). Wright challenges his conviction and sentence entered by the Sixth Judicial Circuit, Pinellas County, Florida. A review of the record demonstrates that, for the following reasons, the petition must be **denied**.

### BACKGROUND

On January 15, 2002, the State Attorney's Office for the Sixth Judicial Circuit, Pinellas County, Florida, filed a two count Felony Information charging Wright with one count of Sexual Battery, a life felony, in violation of § 794.011(3), Fla. Stat. (2001), and one count of Kidnaping, a First Degree Felony punishable by life, in violation of § 787.01(1)(a)(2), Fla. Stat. (2001). (Exhibit 1-A).  On August 24, 2004, an Amended Felony Information was filed charging Wright with one count of Sexual Battery, a life felony, in

1

violation of § 794.011(3), Fla. Stat. (2001), and one count of Kidnaping, a First Degree Felony punishable by life, in violation of § 787.01(1)(a)(2), Fla. Stat. (2001). (Exhibit 1-B).

On March 12, 2004, the State filed a Notice of Intent To Use Evidence of Other Crimes, Wrongs, or Acts Committed by the Defendant. (Exhibit 1-A, R 67). On August 25, 2004, after jury trial, Wright was found guilty as charged. (Exhibit 1-C). The state trial court designated Wright a sexual predator. (Exhibit 1-D).

Wright was adjudged guilty of Sexual Battery and Kidnaping on August 25, 2004, and the trial court sentenced him to life in prison on each count, with the sentences running concurrently. (Exhibit 1-E).

## PROCEDURAL BACKGROUND

Given that Wright has not challenged Respondent's statement of the procedural history of this case, a recitation of the procedural history of Wright's criminal conviction is unnecessary. The issues are fully briefed and the case is ripe for decision. The record is fully developed and the claims of the petition raise issues of law, not issues of fact. *See Breedlove v. Moore*, 279 F.23 952, 959 (11th Cir. 2002). Because of the deference due the state court's findings of fact and conclusions of law, the state courts' determination of Wright's claims largely governs review of those same claims.

## STANDARDS OF REVIEW

### AEDPA Standard

This petition, filed in 2010, is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). AEDPA affects this Court's review of both

factual findings and legal rulings entered by the state courts in the rejection of Wright's federal claims. Pursuant to 28 U.S.C. §2254(e)(1), this Court's review of state court factual findings must be highly deferential; such findings are presumed correct, unless rebutted by a petitioner with clear and convincing evidence. *Wood v. Allen*, 542 F.3d 1281, 1285 (11th Cir. 2008), *affirmed*, ___ U.S. ___, 130 S. Ct. 841 (2010); *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). Moreover, relief which was denied in state court due to asserted factual error can only be granted on habeas where the state court resolution turned on a determination of facts which was not just incorrect but unreasonable. *Wood*, 542 F.3d at 1285; 28 U.S.C. §2254(d)(2).

Similarly, the legal rulings of claims adjudicated in  state courts only provide a basis for federal relief where the state court adjudication was either "contrary to" clearly established federal law as determined by the United States Supreme Court, or involved an "unreasonable application" of such law. *See* 28 U.S.C. §2254(d)(1); *Haliburton v. Secretary, Dept. of Corrections*, 342 F.3d 1233, 1238 (11th Cir. 2003). In *[Terry] Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed these standards at length. The Court explained that a state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. The question is whether the state court correctly *identified* the proper rule of law to be applied. *Robinson*, 300 F.3d at 1344-45; *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is not "contrary to" established federal law

3

even if a federal court might have reached a different result relying on the same law. *Williams*, 529 U.S. at 405-06; *Robinson*, 300 F.3d at 1344-45.

A state court ruling is an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law, but unreasonably *applies* that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. A federal court does not independently review the correctness of the state court adjudication; the "unreasonable application" analysis requires a showing that the state court ruling is not simply incorrect or erroneous, but *objectively unreasonable. Williams*, 529 U.S. at 409-410; *Robinson*, 300 F.3d at 1345; *Putman*, 268 F.3d at 1241. The measuring stick for both the "contrary to" and "unreasonable application" assessments of the state court merits adjudication is "clearly established federal law," which refers only to the holdings, and not dicta, of the United States Supreme Court at the time of the relevant state law decisions. *Williams*, 529 U.S. at 412; *Putman*, 268 F.3d at 1241.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court set forth the standard for relief where constitutional error is determined to exist on habeas review. This test is "less onerous" then the harmless error standard enunciated in *Chapman v. California*, 386 U.S. 18 (1967). "The test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht*, 507 U.S. at 637. Although no constitutional error has occurred in this case, any

4

possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

AEDPA requires greater deference to state court decisions than the traditional *de novo* standard of review; Wright has the burden to overcome the presumption of correctness attached to state court factual findings or to establish that the state court legal rulings were contrary to, or unreasonable applications of, established federal law. *Crawford*, 311 F.3d at 1295.

### Ineffective Assistance of Counsel Standard

To have a facially valid claim of ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The standard of review is "doubly deferential" when "a *Strickland* claim [is] evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, --- U.S.--- ,129 S. Ct. 1411, 1420 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Id.* (quotation marks omitted).

### DISCUSSION

### Ground One

Wright alleges that "the trial court erred in allowing hearsay and unconfrontable testimony into evidence which violated" his constitutional rights. Wright raised this claim on direct appeal. (Exhibits 2-4). The State courts correctly found that the out-of-court statements of Kelly Ostroski, the victim,[1] were properly allowed into evidence because each statement fell within a firmly rooted exception to the hearsay rule. The statements were not testimonial.  Moreover, if there were any error in the admission of any of the statements, the error was harmless.

<u>The Evidence at Trial</u>

The evidence at trial showed that on September 17, 2001, between 7:00 and 7:30 a.m., two women, Chakakhan Hines and Lautausha Austin, while on their way to work in Ms. Hines' vehicle, saw the victim walking down the street naked from the waist down and with her hands tied behind her back and one hand tied to her right ankle with a shoestring. (Exhibit 1:Vol.4,T:35-37, 58-59). The victim was walking "slumped over a little" because of the way she was tied. (Exhibit 1:Vol. 4,T:37). The victim was in pain and was crying for someone to help her. (Exhibit 1:Vol.4, T:38,60). Ms. Austin tried to untie the shoestring, but it was too tight and had to be cut with scissors. The victim's hands were turning blue. (Exhibit1:Vol. 4, T 59-60). Once she was "cut loose," the victim dropped to the ground, upset and crying. The victim was dirty, had two black eyes, bruises on her legs, and numerous scratches on her back, knees, and shoulders. (Exhibit 1:Vol.4, T:38, 55, 63). There were also impression marks on her wrists and ankles where the shoelace had been tightly tied. (Exhibit 1:Vol.4, T:39).

---

[1] Kelly Ostroski was not available to testify at Wright's trial as she was the victim of a non-related homicide prior to trial.

Ms. Hines and Ms. Austin asked the victim how she came to be tied up and why she was walking down the street in such a condition. (Exhibit 1:Vol.4, T:40). The victim stated that she had been walking and that a black man came up, snatched her "off the street," put something over her head, and took her to a remote area. (Exhibit 1:Vol. 4, T:50). The victim said that her attacker dragged her from place to place, repeatedly raping and beating her. (Exhibit 1:Vol.4, T:51). The victim did not give or provide any details concerning the rapes. Ms. Hines called 911 and she and Ms. Austin remained at the scene until the police and paramedics arrived. (Exhibit 1: Vol. 4, T:39, 61).

The defense objected on hearsay grounds to any testimony concerning the victim's statements to Ms. Hines and Ms. Austin. (Exhibit 1:Vol. 4, T:40-41). The state trial court ruled that the victim's statements to Ms. Hines and Ms. Austin were admissible as excited utterances. (Exhibit 1:Vol. 4, T:47). The state trial court also ruled that statements made by the victim for the purpose of medical diagnosis and treatment, including statements made during the sexual assault victim examination (SAVE), were admissible under *Crawford v. Washington*, 541 U.S. 36 (2004).  (Supplemental Exhibit: Pre-trial Hearing: R 525).  However, statements intended to establish what happened for law enforcement purposes would not be admissible. (Supplement Exhibit: Pre-trial Hearing: 527-529).

<u>Wright's *Crawford* Argument on Direct Appeal</u>

Wright argued that allowing the victim's out-of-court statements into evidence violated his Sixth Amendment right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004), in which the United States Supreme Court ruled that the admission of testimonial hearsay statements against an accused violates the confrontation clause of the United States Constitution if the declarant is unavailable to testify at trial and the accused

7

had no prior opportunity to cross-examine the witness.  Wright's argument is not correct.

The victim's out-of-court statements fall within firmly rooted exceptions to the hearsay rule, as the statements qualified as either excited utterances or statements made for medical diagnosis or treatment.  *Crawford* is inapplicable to "firmly rooted" hearsay exceptions. *See United States v. Baker*, 432 F.3d 1189, 1204-1205  (11th Cir. 2005); *Herrera v. Cannon,* 2010 WL 2731850 at *8 (M.D. Fla. July 9, 2010); *Sproule v. State*, 927 So. 2d 46, 47-48 (Fla. 4th DCA 2006). Because all of the out-of-court statements in the instant case fell within firmly rooted exceptions to the hearsay rule, they were admissible.

<u>Victim's Statements Were not Testimonial</u>

Moreover, even if statements falling within firmly rooted exceptions were subject to *Crawford*, the victim's statements were properly admitted because they were not testimonial.[2]  The *Crawford* Court did not specifically define "testimonial." The Court did note, but did not expressly adopt, the following three possible formulations of testimonial statements:

> 1. ex parte in-court testimony or its functional equivalent such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;
>
> 2. extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;

---

[2] This Court acknowledges that some courts have held that excited utterances may be testimonial, depending on the circumstances of the case. *See Howard v. State*, 902 So. 2d 878 (Fla. 1st DCA 2005)(Excited utterance to police officer found to be testimonial within the meaning of the third *Crawford* definition under the particular circumstances of the case); *Lopez v. State*, 888 So. 2d 693 (Fla. 1st DCA 2004)(exited utterance to police officer at scene found to be testimonial, with the court stating that "we do not think that excited utterances can be automatically excluded from the class of testimonial statements").

> 3. statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Crawford*, 541 U.S. at 51-52. The Court stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68. The Court further noted that the Confrontation Clause:

> . . . applies to "witnesses" against the accused--in other words, those who "bear testimony." 1 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Ibid*. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

*Crawford*, 541 U.S. at 51. Based on the focus in *Crawford*, it appears that "at a minimum" "testimonial statements" included "prior testimony at a preliminary hearing, before a grand jury, or at a former trial" and police interrogations. *Washington v. State*, 18 So. 3d 1221, 1223-24 (Fla. 4th DCA 2009).

The victim's statements to Ms. Hines and Ms. Austin clearly were not testimonial. Ms. Hines and Ms. Austin were "civilians" who stopped to render aid to the victim while she was still bound, hysterical, and in evident pain. The statements do not fall within any of the *Crawford* definitions of testimonial. "Excited utterances heard and testified to by lay witnesses are not *Crawford*-style testimonial statements." *See Herrera- Vega v. State,* 888 So. 2d 66 (Fla. 5th DCA 2004). Thus, these statements were properly admitted at trial.

The victim's statements to the paramedics were not testimonial. The statements were excited utterances and were made for the purpose of medical diagnosis and

treatment, not to prove a crime. Paramedics render emergency aid; they do not investigate crimes. Paramedic Hollenback testified that he responds to emergency calls to assist victims and take care of people having medical problems. As a paramedic, the first thing he does when he responds to a call is gather as much information as possible to determine what the emergency is and what caused it, so that he can determine an effective treatment. (Vol. 4, T 68). Hollenback writes a report based on what the patient tells him and the report goes with the patient to the facility to which the patient is transferred. The report assists emergency room personnel. (Vol. 4, T 70). Based on Mr. Hollenback's testimony, any questioning by the paramedics was for the purposes of providing the victim medical aid, not for the purpose of investigating a crime.

The victim's statements to Officer Boccia at the scene of the crime also were not testimonial. Generally, initial police-victim interactions do not involve interrogation and resulting statements are not testimonial. *Davis v. Washington,* 547 U.S. 813, 831 (2006). This fact is particularly true when the statements made by the victim are excited utterances. See *Bartee v. State*, 922 So. 2d 1065, 1069 n.3 (Fla. 5th DCA 2006) (An excited utterance by a crime victim to a police officer, made in response to minimal questioning, is not testimonial.); *United States v. Brun*, 416 F.3d 703, 707-708 (8th Cir. 2005); *United States v. Luciano*, 414 F.3d 174, 179-180 (1st Cir. 2005).

Even if one or more of the victim's statements should have been excluded, any error was harmless. There is no doubt that the statements to Ms. Hines and Ms. Austin were admissible. With those statements in evidence, there is no reasonable possibility that any error in the admission of the other statements affected the verdict.

The state court's findings which constitute factual determinations are entitled to the

10

presumption of correctness provided under 28 U.S.C. § 2254(e)(1), which Wright does not overcome by clear and convincing evidence. Wright has failed to allege and show that the state courts' decisions resulted in an unreasonable application of clearly established federal law as determined by the Supreme Court, or that the State court's determination of facts was unreasonable in light of the evidence. Ground one does not warrant habeas corpus relief.

## Ground Two

Wright alleges that he was "denied a fair trial by the trial court by allowing collateral crimes evidence to become a feature of trial."  Wright raised this claim on direct appeal. (Exhibits 2-4). Wright contends that the collateral crimes evidence impermissibly became a feature of the trial because of the amount of evidence presented relating to the collateral crimes and because one of the collateral crimes victims began crying and fell or slid out of her chair during her testimony. Wright's claim fails. The state courts properly held that the collateral crimes evidence did not impermissibly become a feature of the trial.

The State presented evidence relating to several collateral crimes victims, including Ms. Smith and Ms. Hamilton. The State did not present an unreasonable amount of evidence relating to either of those crimes. None of the *Williams*[3] rule witnesses testified in any more detail about the evidence relating to the collateral crimes than other witnesses testified about the evidence relating to the crimes against the victim; and none of them testified to any acts more serious than those for which Wright was on trial. Furthermore, at the beginning of its closing argument the State thoroughly argued the sufficiency of the

---

[3] *Williams v. State*, 117 So. 2d 473 (Fla. 1960).

evidence to prove the charged crime prior to mentioning the collateral crimes evidence. Under the circumstances of the instant case, the collateral crimes evidence did not become a feature of the trial.

Even if the evidence related to the collateral crimes was more extensive than the evidence of the charged crimes, this is not the test for determining whether the collateral crimes evidence became a feature of the trial. In *Conde v. State*, 860 So. 2d 930, 944-945 (Fla. 2003), the State presented three days of evidence regarding five prior murders. The Florida Supreme Court held that the collateral crimes evidence "did not become an impermissible feature of the trial and that the trial court did not abuse its discretion in allowing the evidence . . . ." The Court held that collateral crimes evidence becomes a feature of the trial . . . when inquiry into the collateral crimes "transcends the bounds of relevancy to the charge being tried" and the prosecution "devolves from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant." *Conde*, 860 So. 2d at 944-945 *(*citing *Williams v. State*, 117 So. 2d 473, 475 (Fla. 1960). The *Conde* Court then noted that "it is not solely the quantity but also the quality and nature of collateral crimes evidence in relation to the issues to be proven that determines whether its admission has 'transcended the bounds of relevancy to the charge being tried.'" 860 So. 2d at 944-946. Finally, the *Conde* Court emphasized that "the trial court repeatedly instructed the jury as to the proper purpose of this *Williams* rule evidence each time it was introduced."  860 So. 2d at 947.

Likewise, in Wright's case, the trial court repeatedly instructed the jury as to the proper use of the collateral crimes evidence. The evidence did not impermissibly become a feature of the trial. Wright fails to demonstrate that the State crossed the nebulous line

12

separating properly admitted similar fact evidence from evidence that became a feature of the trial. His claim that the collateral crime evidence became a feature of the trial because one of the collateral crimes victims became distraught during her testimony and slid or fell to the floor crying is without merit. There is no indication that the witness was overly emotional **throughout** the testimony. A recess was called when the witness became distraught. The state trial judge instructed the witness to finish her testimony without crying and she complied. The judge's action in Wright's case assured that the collateral crimes evidence did not become an impermissible feature of the trial. *See Finney v. State*, 660 So. 2d 674, 683 (Fla. 1995)(collateral crimes evidence did not become a feature of the trial although the victim became "visibly upset" where a recess was called when the witness became upset, and the testimony was not overly emotional and was not made a focal point of the proceedings.)

The state court's findings, which constitute factual determinations, are entitled to the presumption of correctness provided under 28 U.S.C. §2254(e)(1), which Wright does not overcome by clear and convincing evidence. Wright has failed to allege and show that the state courts' decisions resulted in an unreasonable application of clearly established federal law as determined by the Supreme Court, or that the State court's determination of facts was unreasonable in light of the evidence.

Ground two does not warrant habeas corpus relief.

### Ground Three

Wright alleges that trial counsel was ineffective for "failure to adequately do a pre-trial investigation and fully prepare for trial." Specifically, he raises ten claims (or

subclaims) to support ground three, alleging that the claims were previously raised in his Rule 3.850 motion for postconviction relief. The record shows that Wright raised some, but not all, of these sub-claims as ineffective assistance of counsel claims in his Rule 3.850 motion for postconviction relief.

### Unexhausted and procedurally barred Sub-Claims

Wright did not properly raise the following claims in his Rule 3.850 motion in state court:

> a) "That he was denied Due Process due to his counsel's failure to argue relevant law";
>
> b) "That he was denied Due Process due to his counsel's failure to move for mistrial";
>
> c) "That he was denied Due Process due to his counsel's failure to fully advance counsel's chosen consent defense";
>
> d) "That he was denied Due Process due to the cumulative effect of counsel's errors and omissions, which amount to ineffective assistance of counsel."

(See Doc. 4, [Habeas Petition] at pg. 9).

Wright failed to specifically raise these claims in either his direct appeal or in his Rule 3.850 motion for postconviction relief, the denial of which was affirmed by the state district court of appeal. (Exhibits 11-20). Because Wright did not raise these claims (now a part of ground three) in state court, the claims are unexhausted and procedurally barred. Wright has not shown cause and prejudice to overcome the procedural bar. Nor has he shown that a manifest injustice will occur if the Court does not reach the merits of these claims.

## Remaining Ineffective Assistance of Counsel Claims[4]

**Sub-Issue A:**

Similar to claim one of his Rule 3.850 motion, Wright alleges that he was prejudiced by the prosecution's use of scientific evidence during the trial, without the trial court's first holding a pre-trial "*Frye*"[5] hearing to determine the admissibility of such evidence. This claim alleged trial court error, which is not cognizable in a postconviction motion, but is properly argued on direct appeal. *Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001). This claim has no merit.

**Sub-Issue B:**

Wright also alleges that defense counsel was ineffective or failing to (1) adequately cross-examine the prosecution's DNA expert using the "*Frye*" standard; (2) request a "*Frye*" hearing on the DNA evidence; (3) file a motion to suppress the DNA evidence; and (4) file a motion to appoint a DNA expert for the defense. Wright contends that, but for these errors committed by defense counsel, the jury would have found him not guilty.

**(1) Failure To Adequately Cross-Examine the DNA Expert**

As the party opposing the use of the DNA test results to prove guilt, Wright contends that defense counsel should have cross-examined Robin Ragsdale, the State's DNA expert, regarding the reliability of the DNA tests. The record reflects that defense counsel asked Robin Ragsdale two questions on cross-examination. (Vol.2; R:211-212). However, the record also reflects that defense counsel argued consent as a defense to the crimes

---

[4] See Exhibits One and Two to this Order which are the state court's orders denying relief on some of the Rule 3.850 claims.

[5] *Frye v. United States*, 293 F. 1013 (D.C. 1923).

charged. (Exhibits 1-2; Vol.2; R:159-164). In arguing consent as a defense, trial counsel had to admit that some element of sexual intercourse took place, thereby conceding to the scientific DNA evidence. ( Exhibits 1-2; Vol.2;R:159- 164;175-178).

The record reflects that Wright was aware of this strategy before the trial began. When the court questioned Wright about relying on the consent defense and about stipulating that the blood drawn at the jail was his, Wright acknowledged that he understood what was occurring and did not disagree with counsel's strategy. (Exhibits 1-2;Vol.2;R:159-164).

The state trial court found that, given the defense's theory of consent, the DNA evidence was not an issue. In fact, defense counsel's question to the DNA expert that the finding of DNA evidence "has nothing to do with determining whether there was any evidence of rape?" and her answer, "[t]hat is correct," clarified that the presence of DNA did not mean a crime had occurred, and supported Wright's consent defense. (Exhibits 1-2; Vol.2; R:211-212).

In *Cherry v. State*, 659 So.2d 1069, 1072 (Fla. 1995), the defendant claimed that his defense counsel was ineffective for failing to investigate an involuntary intoxication defense. In that case, the Florida Supreme Court stated that an "involuntary intoxication defense would actually have been inconsistent with [the defendant's] defense that he had not committed these murders, as well as [the defendant's] own testimony on the issue of intoxication." *Id.* at 1072. Applying that concept to Wright's case, a critical cross-examination of the DNA expert would have been inconsistent with Wright's defense that he engaged in consensual sexual intercourse with the victim. As a result, the trial court correctly found that Wright failed to demonstrate either that counsel was ineffective in

16

failing to challenge the DNA evidence, or that a reasonable probability existed that the outcome would have been different absent the alleged ineffective assistance. This claim has no merit.

### (2) Failure To Request a "*Frye*" Hearing

Wright alleges that defense counsel was ineffective for failing to request a "*Frye*" hearing on the admissibility of the DNA evidence. Under Florida law, a "*Frye*" hearing is necessary to determine whether an expert scientific opinion is admissible because an expert scientific opinion must be based on techniques that are generally accepted by the relevant scientific community and found to be reliable. *Zack v. State*, 911 So. 2d 1190, 1197 (Fla. 2005). However, a "*Frye*" hearing is not necessary when the science at issue is not new or novel. *Id.* at 1198. Florida law holds that DNA testing is not new or novel, and there is nothing in the record indicating otherwise. *Zack,* 911 So. 2d at 1198 n.3. *See Magaletti v. State*, 847 So. 2d 523 (Fla. 2d DCA 2003); *McDonald v. State*, 952 So. 2d 484 (Fla. 2006).

In *Zack*, the DNA evidence did not prove any fact at issue. *Zack*'s defense counsel did not request a *Frye* hearing. The state trial court concluded that defense counsel's strategy did not constitute ineffective assistance of counsel. *Id.* 1198. Likewise, in this case, because Wright argued consent as a defense, the DNA evidence did not prove any fact at issue. The state trial court correctly found that Wright failed to show a reasonable probability existed that the outcome would have been different had counsel filed a motion for a *Frye* hearing. Wright cannot show that, absent counsel's alleged ineffective assistance, the outcome of his case would have been different. This claim has no merit.

### (3) Failure To File a Motion to Suppress

Wright alleges that defense counsel was ineffective for failing to file a motion to suppress the scientific DNA evidence. Based on the aforementioned reasons, counsel's moving to suppress the DNA evidence would have negated the consent defense. Additionally, there is nothing in the record indicating that a motion to suppress would had merit.  Therefore, Wright failed to show ineffective assistance of counsel.  Wright cannot show that absent the alleged ineffectiveness, the outcome of his case would have been different. This claim has no merit.

### (4) Failure To Petition Court for an Expert Witness and Sub-Issue B

Wright alleges that defense counsel was ineffective for failing to file a motion to appoint a DNA expert for the defense, and/or erred in failing to hire a DNA expert on Wright's behalf. This claim is partially refuted by the record. On December 3, 2002, defense counsel filed a "Motion to Appoint Confidential Expert for DNA Evaluation." (Vol.2; R:239-242). On December 12, 2002, the court granted the motion to appoint a DNA expert and allocated up to $1,500.00 for the expert. Therefore, to the extent that Wright's claim alleges defense counsel erred in not moving the court to appoint a DNA expert, this claim is refuted by the record. (Exhibits 1-2; Vol.2; R:239-242).

Wright also alleges that defense counsel was ineffective for failing to hire a DNA expert. Although the record does not refute this claim, Wright fails to show any prejudice caused by this alleged error. He claims that if the jury had heard from a DNA expert for the defense, a reasonable probability exists that the outcome of the case would have been different because the jury would have found him not guilty. To support this claim, Wright submits specific testimony that the defense expert would have proffered to the jury, and argues that this testimony would have shown the DNA test was inconclusive. Again, this

18

argument is without merit. The specific testimony that Wright claims would have been elicited from the defense expert may have been relevant and important if Wright's defense at trial had been identity instead of consent.

Additionally, Wright fails to identify with specificity the defense expert who would have actually tendered this testimony. Without identifying the defense expert, Wright's claim is merely a conclusory allegation, which is insufficient for establishing a prima facie case of ineffective assistance of counsel.  This claim has no merit.

### Sub-Claim Raised as Ground Two of his 3.850 Motion

Wright alleges that defense counsel was ineffective for (1) failing to request a motion to continue the trial when two defense witnesses could not be located; and (2) failing to file a motion for funds to locate the two witnesses. Wright additionally alleges that defense counsel was ineffective for "failing to call witnesses."

(1) Failure To File a Motion to Continue

Wright fails to show that a reasonable probability exists that the outcome of the case would have been different, but for defense counsel's failure to request a continuance on the day of trial because two witnesses could not be located. Immediately prior to the trial's commencing, Wright brought this issue to the court's attention and the court made a lengthy inquiry into the efforts made by defense counsel to locate the witnesses and the witnesses' relevance to the case. (Exhibits 1-2; Vol.2:R:154-163). The state trial court's inquiry revealed that defense counsel made diligent efforts to find the witnesses.  However, defense counsel was working with extremely vague information because Wright could not identify the witnesses. (Exhibits 1- 2;Vol.2:R:154-163). The alleged crimes occurred in September 2001; Wright was charged on January 15, 2002; and the trial commenced in

19

August 2004. (Exhibits 1- 2;Vol.2;R:243-251). If Wright could not identify the witnesses in over two years, a continuance to give defense counsel more time to locate these witnesses was not likely to change the outcome of the case. This claim has no merit.

(2) Failure to File a Motion for Funds

Wright fails to show that a reasonable probability exists that the outcome of the case would have been different, but for defense counsel's failure to file a motion requesting additional funds to locate two witnesses. The record reflects that on December 12, 2002, and August 12, 2004, defense counsel filed, and the court granted, two motions authorizing funds for investigative costs. (Exhibits 1-2;Vol.2;R:252-258). Even though Wright could not identify the witnesses with any specificity, defense counsel hired an investigator and used the $1,000.00 he received from the court to attempt to locate the alleged witnesses. (Exhibits 1-2;Vol.2;R:154-163). The evidence overwhelmingly indicates that the outcome of the case would not have been different, but for defense counsel's failure to request additional funds from the court, and Wright has failed to rebut this evidence. Thus, this claim has no merit.

Wright also alleges that defense counsel was ineffective for failing to call witnesses. In cases involving claims of ineffective assistance of counsel based on counsel's alleged failure to investigate, interview, or call witnesses, a facially sufficient motion must include the following allegations: (1) the identity of the prospective witnesses; (2) the substance of the witnesses' testimony; and (3) an explanation as to how the omission of this evidence prejudiced the outcome of the trial. *Kilgore v. State*, 631 So. 2d 334 (Fla. 1st DCA 1994) (citing *Highsmith v State*, 617 So. 2d 825, 826 (Fla. 1st DCA 1993)). Wright fails to identify the witnesses he alleges defense counsel was ineffective for not calling. Therefore, this

20

claim is facially insufficient and has no merit.

Sub-Claim raised as Ground Three of Wright's 3.850 motion:

Wright alleges that defense counsel was ineffective for failing to object to statements made by the prosecution. According to Wright, the prosecutor acted as both a witness and an advocate when making specific statements during the opening statement and the closing argument, and the statements were confusing, prejudicial, and were made to emotionally impact the jury because the victim was dead and unable to testify. This claim is without merit.

During the opening statement and the closing argument, the prosecutor stated, "She was upset. Help me, please help me, somebody get the police, help me," and "She's going down the street screaming, somebody help me, somebody help me." (Exhibits 1-2;Vol.2;R:173,227). The victim made these statements to Ms. Hines, and Ms. Austin, two state witnesses.

As Wright notes, the prosecutor asked Ms. Hines about the victim on direct examination, "Was she upset?" and Ms. Hines replied, "Yeah. She was crying somebody help her and stuff like that, yes." (Exhibits 1- 2;Vol.2;R:178- 179,188-189). Ms. Austin, another state witness, testified on direct examination that she saw the victim crying and heard her saying that "she needed some help, she needed someone to help her." (Exhibits 1-2;Vol.2;R:188-189).

At the beginning of the trial, the court instructed the jury that the opening statement gives the "attorneys a chance to tell you what evidence they believe will be presented during the trial. What the lawyers say is not evidence, and you are not to consider it as such." (Exhibits 1-2;Vol.2;R:169-170). At the end of the trial, before the closing arguments,

the court instructed the jury that the attorneys would present their final arguments, and to "[p]lease remember what the attorneys say is not evidence." (Exhibits 1-2;Vol.2;R:221). There is no impropriety in the statements at issue, as they were a reasonable recitation of the testimony at trial. It is proper for the prosecution to submit its view of the facts to the jury or to argue what conclusion might be drawn from certain evidence. *Davis v. State*, 698 So.2d 1182, 1190 (Fla. 1994). The prosecutors in the instant case were doing just that. Therefore, as  there was no impropriety in these statements.  This claim has no merit.

To the extent that Wright claims defense counsel was ineffective for failing to object to the testimony attributed to the victim as hearsay, this claim is refuted by the record. Defense counsel did object to the testimony attributed to the victim. (Exhibits 1-2;Vol.2;R:179-187,188-190). Additionally, this issue was litigated extensively prior to the trial. (Exhibits 1-2;Vol.2; R:259-260,263-280).

Sub-Claim raised as Ground Five of Wright's 3.850 motion:

Wright alleges that defense counsel was ineffective for failing to investigate the reliability and credibility of Vanessa Smith, a state witness, whose testimony was offered for *Williams* Rule evidence. This allegation is refuted by the record. Defense counsel did attack Ms. Smith's reliability and credibility during his thorough cross-examination. (Exhibits 1- 2;Vol.2;R:192-209). The evidence and/or facts that Wright contends defense counsel would have discovered if he had investigated Ms. Smith more thoroughly are conclusory and speculative, and would not have affected the outcome of the case in light of the testimony elicited from Ms. Smith during the direct and cross-examinations. *See Kennedy v. State*, 547 So. 2d 912, 913-914 (Fla. 1989). Therefore, this ground is also without merit.

Sub-Claim raised as Ground Six of Wright's 3.850 motion:

In addition, Wright alleges that defense counsel was ineffective for failing to impeach Ms. Smith.  This allegation is also refuted by the record, as defense counsel did impeach Ms. Smith on cross-examination. (Exhibits 1-2; Vol.2;R:192-209). The fact that the impeachment did not provide the testimony or results Wright may have hoped for does not mean that counsel was ineffective. Additionally, much of the testimony that Wright alleges counsel should have elicited through impeachment of Ms. Smith is pure speculation and assumption. This claim has no merit.

Sub-Claim raised as Ground Seven of Wright's 3.850 motion

Wright alleges that defense counsel was ineffective for not deposing Carry Logan-Wells, a state witness, whose testimony was offered by the State as *Williams* Rule evidence to prove identification of Wright in a similar act, and thereby guilt in the instant case. Wright contends that Ms. Logan-Wells' testimony was crucial to the State's case.

To prove  defense counsel ineffective for failing to depose this witness, Wright must state what evidence would have been discovered if counsel had conducted the deposition. *Magill v. State,* 457 So. 2d 1367, 1370 (Fla. 1984). Wright claims that when Ms. Logan-Wells testified against him in a previous trial, *State v. Wright*, CRCO2-00257-CFANO, she could not positively identify him, and that this fact would have been revealed in a deposition. Wright asserts that this is important because Ms. Logan-Wells positively identified him to the jury in the instant case. Wright contends that but for counsel's ineffective assistance in failing to discover this fact through a deposition, there is a reasonable probability that the jury would have found him not guilty. This claim has no merit.

Defense counsel did not need to take Ms. Logan-Wells' deposition because counsel

represented Wright in case number CRCO2-00257-CFANO and was present when she testified in that case. (Exhibits 1-2; Vol.3;R:407-445). Counsel did not need to take her deposition to discover that she could not positively identify Wright in the previous trial because he heard her testify and had the opportunity to cross-examine her during both trials. (Exhibits 1-2; Vol.3;R:407-445).

Sub-Claim raised as Ground Eight of Wright's 3.850 motion:

Wright alleges that his defense counsel was ineffective for not investigating and preparing an alibi defense. Specifically, he contends that he told defense counsel that his neighbor and his mother would testify that he was at home during the time period that he allegedly tied up and raped the victim. Wright contends that but for counsel's "do nothing" strategy, the jury would have returned a different verdict. This claim is without merit.

On November 3, 2008, the trial court conducted an evidentiary hearing on the alibi issue. (See Exhibit Three to this Order).  This claim was the only remaining Rule 3.850 claim to be resolved at the evidentiary hearing. At the hearing, Wright and Daniel Hernandez, Wright's trial attorney, testified. Wright testified that he told defense counsel he should call his mother and his neighbor as alibi witnesses, yet counsel ignored this request. These witnesses, Wright contended, would have proven that he was home at the time of the offenses.

Defense counsel, whom the court found credible, testified that Wright told him about other possible alibi witnesses but he never mentioned the need for his mother or his neighbor to testify as to an alibi or for any other purpose. Counsel testified that he investigated these witnesses to the best of his ability, but none came to fruition. Counsel further testified that if Wright had mentioned the need for his mother or his neighbor to

24

testify, he surely would have investigated this defense, especially considering that these witnesses' locations were readily known. In fact, counsel testified that he met with Wright's mother in her home when counsel was obtaining clothes for Wright and she did not mention that she could account for Wright's whereabouts at the time of the offenses.

Additionally, the trial court record is consistent with defense counsel's evidentiary hearing testimony. The record shows that prior to the jury trial's beginning, the court conducted an exhaustive colloquy with defense counsel and Wright about the evidence, or lack thereof, to be presented by the defense. (Exhibits 1-2; Vol.3; R:472-480). When the court specifically asked Wright about alibi witnesses that could not be located, Wright responded by saying "I think the witnesses out there in my behalf, the private investigator needs to be out there and try[sic] to look for them again." (Exhibits 1-2; Vol.3;R:472-480). Wright further said "I think the witnesses need to be found, because if you're in St. Pete, you can be found. They've got driver's licenses out there. They've got the post office. They can locate these people." (Exhibits 1-2; Vol.3;R:472-480). At no time, however, did Wright mention that his mother and his neighbor were two of these witnesses -- witnesses who were easily identifiable.  This claim has no merit.

Sub-Claim raised as Ground Twelve of Wright's 3.850 motion:

Wright alleges that defense counsel was ineffective for failing to present sufficient evidence supporting his consent defense. Specifically, he contends that counsel erred for failing to introduce evidence that the victim was a known prostitute, that she sold herself for money and drugs, and that she participated in "risque" sex. Wright asserts that but for this error, the jury would have returned a not guilty verdict. This claim is without merit.

Evidence about the victim's engagement in prostitution is admissible if the evidence

is sufficiently similar to the victim's conduct as it relates to the charged offenses. *Carlyle v. State*, 945 So. 2d 540 (Fla. 2d DCA 2006). Wright fails to present specific evidence supporting his allegations that the victim was a prostitute; that she sold sex for money and drugs; and that she participated in risque sex.  Additionally, evidence about a victim's sexual history and pattern of conduct has to be "so distinctive and closely resemble the defendant's version of the encounter that it tends to prove" that the victim consented to the acts before the court can find that it is admissible. *Id.* at 544-545.

Wright's version of the facts is unknown. Therefore, it cannot be said that evidence about the victim resembled Wright's version of the facts. (Exhibits 1-2; Vol.3;R:440-442). Furthermore, defense counsel did make several unsuccessful attempts to elicit testimony that the victim was a prostitute. (Exhibits 1-2; Vol.3; R:433-438). Defense counsel was successful in getting the State to stipulate that the victim had nine prior felony convictions. In closing argument, defense counsel argued this fact as well as the fact that the victim used drugs prior to the offense at issue in this case.  (Exhibits 1-2; Vol.3;R:439-445). Even with this evidence before them, the jury found Wright guilty as charged.

Wright fails to meet the first prong of *Strickland* in failing to prove deficient conduct, and fails to meet the second prong of *Strickland* which requires that he prove but for counsel's alleged errors, the result of the proceeding would have been different. *Id.* at 687-88.

## Conclusion as to Ground Three

Trial counsel's performance cannot be characterized as ineffective, as defined by *Strickland.* Wright fails to satisfy the requirements of 28 U.S.C. §§ 2254(d) and (e). Wright fails to show that the State courts' decisions were contrary to, or an unreasonable

application of, clearly established Federal law as determined by the Supreme Court, or that the State court's determination of facts was unreasonable in light of the evidence. 28 U.S.C. §§ 2254(d) and (e). Thus, ground three, composed of several sub-claims, does not warrant habeas corpus relief.

### Ground Four

Wright claims that his trial counsel was ineffective when he "fail[ed] to object to improper comments by the prosecutor." (Doc. 4, p.11). Wright raised this issue in his Rule 3.850 motion. The state trial court summarily denied the claim, and the state district court of appeal affirmed the denial of relief. (Exhibits 11-20).

In support of ground four of his federal habeas corpus petition, Wright alleges:

> The prosecutor was able to violate the witness-advocate rule using hearsay and unconfronted [sic] testimony to become a feature of trial highly prejudicing any type of fair trial; using the comments as an emotional impact on the jury. Then hid behind the shield of the state limiting instruction on *Williams* rule evidence. Using that evidence to bolster the credibility of state witnesses. The state's silent affirmance was contrary to clearly established federal law as determined by the United States Supreme Court and resulted in a decision unreasonably determined in light of the facts and evidence presented in the state court proceeding.

The Court has previously discussed the allegations Wright raises in ground four. (See above). For the previously discussed reasons, ground four has no merit and does not warrant habeas corpus relief.

### FINAL CONCLUSION

The discussion of each of Wright's claims parallels the state courts' findings. Wright has failed to carry his burden of showing that the state courts' rulings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings."

28 U.S. C. §§ 2254(d) and (e).

Accordingly, the Court orders:

That Wright's petition is denied.  The Clerk is directed to enter judgment against Wright and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on July 13, 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Otis J. Wright

28